IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | ) | MISC. NO. |
| OF THE UNITED STATES OF AMERICA | ) | |
| FOR AN ORDER AUTHORIZING | ) | |
| DISCLOSURE OF HISTORICAL CELL | ) | |
| SITE INFORMATION FOR TELEPHONE | ) | |
| NUMBER 813-410-1684 | ) | UNDER SEAL |

## APPLICATION FOR DISCLOSURE OF HISTORICAL CELL SITE INFORMATION PURSUANT TO TITLE 18 U.S.C. SECTION 2703(d)

The United States of America, by and through its counsel, Tejpal S. Chawla, Assistant United States Attorney, hereby and respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require **Verizon Wireless**, a cellular service provider located in the United States (Bedminster, New Jersey), to disclose certain records and other information pertaining to the subscriber, call detail, cell-site and cell sector information for telephone number **813-410-1684**, as described in Attachment A to the proposed Order. In support of this application, the United States asserts the following.

### LEGAL BACKGROUND

**Verizon Wireless (d/b/a Cellco Partnership)** is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require **Verizon Wireless** to disclose the items described in Attachment A. *See* 18 U.S.C. § 2703(c).

This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Attachment A in the proposed Order are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

The applicant certifies that he is an "Attorney for the government" under Rule 1 of the Federal Rules of Criminal Procedure.

The applicant further certifies that the United States Attorney's Office for the District of Columbia, and the United States Capitol Police (USCP) are conducting a criminal investigation of Douglas HUGHES, in connection with violations of Title 49, United States Code, Sections 36306 (Operation of an Unregistered Aircraft) and 36307 (Violation of National Air Defense Airspace) in United States v. Hughes, case 15-MJ-234, which is pending in the United States District Court. See Exhibit 1 (Criminal Complaint and Affidavit in Support). The Grand Jury investigation remains open, and is investigating additional potential crimes related to the underlying criminal activity. During the course of the investigation, officers have identified the following cellular phone numbers as having been used by HUGHES near in time to the alleged incident in this case: 813-399-7860, 813-846-7648 (provider for both is Sprint Nextel), and 813-410-1684 (Verizon Wireless).

As alleged in Exhibit 1, the defendant piloted a gyro-copter aircraft from Gettysburg, Pennsylvania to the West Front Lawn of the U.S. Capitol in Washington, D.C. As part of this

flight, HUGHES utilized a number of cellular phones and electronic devices to attempt to record his flight and communicate with other persons on the ground about his entry into the no-fly zone surrounding Washington, D.C. After HUGHES landed his aircraft, USCP recovered a number of cellular phones and electronic devices from HUGHES' person and his aircraft. Law enforcement has recovered and searched some of these devices, and these searches have indicated that these cellular phones were used before and during HUGHES' flight from Gettysburg to Washington, D.C.

HUGHES' use of these phones is evidenced not only by his physical possession of these devices, but by text messages located on the phones which refer to HUGHES by name (as the recipient of the message), and by photographs which contain images of HUGHES and his family. HUGHES also stated in his post-arrest interview that he utilized the cellular phones found in his possession during the flight in an attempt to record his flight and to communicate with other persons while in flight. HUGHES also indicated he had been planning his flight for over a year.

## REQUEST FOR ORDER

The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Attachment A to the proposed Order are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States confirm the defendant's use of the devices, his specific location and direction of his flight path, any pre-planning in or near the District of Columbia, and identify and locate possible conspirators, and determine the nature and scope of their activities. It will also provide the agents with investigative leads and potential evidence at trial concerning possible offense locations, witnesses and the approximate location of, and contacts made by, possible conspirators. The government only seeks information for cell-site data after the HUGHES

3

indicated planning for his flight was already underway. The government does not seek data of the phone's present whereabouts or information relating to other persons. Cell-site data related to calls is routinely retained by **Verizon Wireless**, as part of its call history information. Further, it is government's counsel understanding that only active use cell-site data is retained by the provider in this case. In other words, this Order is not intended to reach all GPS data for the phone, but only cell-site data for the time of actual communications placed or received by the phone. Accordingly, the United States requests that **Verizon Wireless** be directed to produce all items described in Attachment A to the proposed Order.

The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

**WHEREFORE,** it is respectfully requested that the Court grant an order authorizing **Verizon Wireless** to disclose subscriber, call detail, information and cell-site and cell sector information for telephone number: **813-410-1684** for the period between and including January 1, 2015, and April 16, 2015.

I certify under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 30th day of April, 2015.

                                           Respectfully submitted,

                                           _____
                                           TEJPAL S. CHAWLA
                                               D.C. Bar No. 464012
                                           Assistant United States Attorney
                                           United States Attorney's Office
                                           555 4th Street, N.W.
                                           Washington, D.C. 20530
                                           Telephone:   202-252-7280 (Chawla)
                                           Email: Tejpal.Chawla@usdoj.gov

# Exhibit 1

# UNITED STATES DISTRICT COURT
for the
District of Columbia

**FILED**
APR 1 6 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

United States of America )
v. )
DOUGLAS HUGHES ) Case No.
)
) 15-234 M
)
_____ )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 15, 2015__ in the county of __Washington__ in the
_____ District of __COLUMBIA__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 49 U.S.C. §46306(b)(5) | Registration Violations Involving Aircraft Not Providing Air Transportation |
| 49 U.S.C. §46307 | Violations of National Air Defense Airspace |

This criminal complaint is based on these facts:
See attached

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Kathryn Rivera
*Printed name and title*

Sworn to before me and signed in my presence.

Date: APR 16 2015

_____

DEBORAH A. ROBINSON
U.S. MAGISTRATE JUDGE
*Printed name and title*

City and state: District of Columbia

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. Your affiant, Kathryn Rivera, has been an Officer and Special Agent with the United States Capitol Police (USCP) since July 2001. Your affiant is currently a Special Agent assigned to the USCP's Criminal Investigations Section. Your affiant attended Criminal Investigations Training in 2012 at the Federal Law Enforcement Training Center in Brunswick, Georgia, and Uniformed Police Training in 2001 at the Federal Law Enforcement Training Centers in Brunswick, Georgia and Cheltenham, Maryland, for a combined period of nine months. Your affiant has received extensive formal and on-the-job training in the provisions of the United States Code.

2. Your affiant has been the case agent in numerous investigations involving violations of United States Code and the District of Columbia Code. Your affiant has received specialized training regarding, and has personally participated in, various types of investigative activities, including, but not limited to, the following: (a) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge concerning violations of federal laws; (b) the execution of search warrants; and (c) the handling and maintenance of evidence.

3. The statements made in this Affidavit are based on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers and members of the Federal Aviation Administration (FAA); (c) my review of information provided to me and other law enforcement officers relating to prior investigations of the target; (d) my review and participation in a consensually monitored conversation with the target; and (e) the training and experience of myself and other law enforcement agents and officers.

4. Based on the below described investigation, your affiant submits there is probable cause to believe that Douglas HUGHES, aka Doug Hughes, has committed violations of 49 U.S.C. § 46306 (Registration Violations Involving Aircraft Not Providing Air Transportation) and § 46307 (Violation of National Defense Airspace). Because this affidavit is made for a limited purpose I have not set forth all information known to me concerning this investigation. Instead, I have set forth information that I believe to be sufficient to establish probable cause in support of this application for a criminal complaint and an arrest warrant.

## PROBABLE CAUSE

5. On or about April 15, 2015, officers of the United States Park Police (USPP) observed an individual flying a gyro-copter aircraft above the National Mall in Washington, D.C., in the area of 14th Street and Independence Ave., S.W. near the Washington Monument, approximately 100 feet off of the ground. Officers of the USPP followed the gyro-copter by vehicle down the National Mall. Shortly thereafter, U.S. Capitol Police (USCP) received a radio call regarding a male subject piloting an aircraft and landing on the West Front Lawn of the United States Capitol Building. Uniformed USCP Officers immediately apprehended the pilot, later identified as Douglas HUGHES.

6. Numerous witnesses, including USCP personnel, observed HUGHES piloting the aircraft and landing the aircraft on the Capitol Grounds. The aircraft was identified as a gyro-copter, which is a single seat aircraft that is exposed to the elements, and that shares similarities to both a helicopter and an airplane. HUGHES was the only occupant of the aircraft, and he was stopped by USCP personnel while still seated in the aircraft. Your affiant has also reviewed videotape of the incident and observed HUGHES piloting the

aircraft in the air, and landing the plane on Capitol Grounds. The area where HUGHES landed was in close proximity to pedestrians and automobile traffic on 1st Street, S.W. in Washington, D.C. As a direct result of HUGHES' actions, the U.S. Capitol and Visitors' Center were placed in lock-down, and vehicular and pedestrian traffic was blocked in the area for several hours. HUGHES was arrested and the aircraft was searched and subsequently taken into evidence. No weapons were found on HUGHES or the aircraft.

7. Your affiant, after advising HUGHES of Miranda rights, interviewed HUGHES at USCP headquarters. HUGHES waived his rights and agreed to voluntarily talk to USCP. HUGHES stated he drove a rental vehicle towing his aircraft behind on a trailer, from Florida to an airfield in Gettysburg, Pennsylvania. HUGHES stated that he chose to depart from the Gettysburg airport due to it being an uncontrolled airport, and it being approximately an hour outside of what HUGHES stated he believed was the no-fly zone for Washington, D.C. HUGHES indicated that prior to his take-off, he was aware that the areas around Washington, D.C., and the U.S. Capitol Building in particular, were designated no-fly zones, where it would be unlawful for him to pilot his aircraft. HUGHES stated that on or about April 15, 2015, he took off and piloted his aircraft from Gettysburg to the West Front Lawn of the U.S. Capitol. Additionally HUGHES stated that he sent a time-delayed email to info@barackobama.com of his flight intent to avoid being shot down. HUGHES stated that he intentionally violated the no-fly zone to impart a political message to the country and members of Congress. HUGHES also indicated that he believed he might be shot down as a result of his actions, but that he still persisted in his efforts. HUGHES stated he was not a licensed pilot and had never registered his aircraft with federal authorities. HUGHES indicated he had practiced his flight plan in

advance and that when he saw the National Mall, he turned and flew towards the U.S. Capitol building, eventually landing on the West Front Lawn grassy area. When HUGHES was arrested he had in his possession numerous stamped paper envelopes that he indicated he wanted to give to members of Congress regarding his political message. HUGHES confirmed that he was not acting in any official U.S. Postal Service capacity.

8. Your affiant understands that pursuant to statute and federal regulation, the FAA regulates air travel, aircraft and issues licenses for pilots of aircrafts. Persons who pilot aircraft that are not ultra-light vehicles are required to have license certificates issued by the FAA, and all such aircraft must be properly registered with the FAA. See 49 U.S.C. §§44102, 44103. Pursuant to Title 49 U.S.C. § 46306(b), it is unlawful:

> (5) if the person owns an aircraft eligible for registration under section 44102 of this title and knowingly and willfully operates, [or] attempts to operate . . . when – (A) the aircraft is not registered under section 44103 of this title.. ...
> (6) knowingly and willfully operates or attempts to operate an aircraft eligible for registration under section 44102 of this title knowing that (A) the aircraft is not registered under title 44103 of this title. . . . [or]
> (7) knowingly and willfully serves or attempts to a serve in any capacity as an airman without an airman's certificate authorizing the individual to serve in that capacity

Your affiant understands that these statutory requirements do not apply to ultra-light vehicles, but that pursuant to 14 C.F.R. §103.1, aircraft that are over 254 pounds are not considered ultra-light weight vehicles. Similarly, vehicles with a fuel capacity exceeding five (5) U.S. gallons are not ultra-light vehicles.

9. Your affiant is aware that, pursuant to authority in Title 14 U.S.C. §46307, the area surrounding Washington, D.C. has been designated to be a restricted area where aircraft, regardless of whether or not they are ultra-light weight vehicles, may not travel without proper authorization. Pursuant to Title 49 U.S.C. §46307: "A person that knowingly or willfully violates section 40103(b)(3) of this title or a regulation prescribed

or order issued under section 40103(b)(3) [prohibition of flight in national defense airspace] shall be fined under title 18, imprisoned for not more than one year, or both." Pursuant to Title 14 C.F.R. Part 93, which was issued under Title 49 U.S.C. §46307, the area immediately surrounding the D.C. Metropolitan Area, including all of the District of Columbia, has been designated as the D.C. Metropolitan Area Flight Restricted Zone (DC FRZ). Pursuant to Title 14 C.F.R. §93.339, it is unlawful to fly any aircraft, including ultra-light vehicles, in the DC FRZ, unless prior clearance and authorization has been obtained. These requirements, pursuant to Title 14 C.F.R. §93.39(a) include, pre-clearance, and include additional requirements, including:

(1) The aircraft is equipped with an operable two-way radio capable of communicating with Air Traffic Control;
(2) Before operating an aircraft in the . . . DC FRZ, the pilot establishes two-way radio communications with the appropriate Air Traffic Control facility and maintains such communication while operating the aircraft in . . . DC FRZ;
(3) The aircraft is equipped with an operating altitude reporting transponder;
(4) Before operating an aircraft in the . . . DC FRZ, the pilot obtains and transmits a discrete transponder code from Air Traffic Control, and . . . continues to transmit the assigned code . . .; [and]
(5) For VFR [visual flight rules] operations, the pilot must file and activate a DC FRZ . . . flight plan by obtaining a discrete transponder code.

10. Your affiant has been made aware that HUGHES did not file any flight plan for the DC FRZ prior to his flight on April 15, 2015. Your affiant also understands that HUGHES did not contact or maintain any contact with any air traffic controller before or during his flight, and that his aircraft was not equipped with a transponder or radio. HUGHES also stated during his interview that he did not seek or obtain pre-clearance from the FAA or any other federal authorities for his flight plan. HUGHES also did not seek or obtain pre-clearance from the FAA to fly in the DC FRZ.

11. Your affiant is aware that within the DC FRZ, the airspace surrounding the U.S. Capitol, the National Mall, and the White House have additional restrictions from unauthorized air traffic, which are greater than those of the DC FRZ ("P-56 restrictions"), which are codified at Title 14 C.F.R. Part 73. The area where HUGHES flew his aircraft was within the P-56 zone.

12. Your affiant knows that in October 2013, HUGHES was subject of an investigation by the United States Secret Service (USSS) and USCP, when USSS received information from CW1. CW1 reported that HUGHES had purchased a gyro-copter and planned on flying it from an undisclosed airfield in Front Royal, Virginia and violating the Washington, D.C. no-fly zone and landing the aircraft either on U.S. Capitol Grounds or White House grounds. CW1 stated that HUGHES intended on filming and broadcasting the flight on his website "thedemocracyclub.org". Subsequently, USSS agents interviewed HUGHES, and he denied having a gyro-copter, and he denied having any intent to fly it into the no-fly zone. HUGHES indicated during the interview that he was aware of the no-fly zone in Washington, D.C.

13. USCP agents have spoken with representatives from the FAA, who indicated that they have no record of HUGHES possessing a pilot's certificate or registration for the aircraft flown on April 15, 2015. Furthermore, the FAA had no flight plan on record filed by HUGHES.

14. Your affiant is aware that USCP, with assistance from members of the Motor Carrier Safety Unit of the Metropolitan Police Department (MPD), weighed the gyro-copter piloted by HUGHES that was recovered from the Capitol grounds. The gyro-copter was weighed by a certified vehicle scale and found to be approximately 350

pounds in weight. When weighed, the gyro-copter was unoccupied and all baggage and cargo had been removed. Because the vehicle was over 254 pounds it does not qualify as an ultra-light vehicle pursuant to FAA regulations. On April 16, 2015, members of the FAA inspected the aircraft and determined that the gyro-copter used by HUGHES was also equipped with a ten-gallon fuel tank, which further indicated the aircraft was not an ultra-light vehicle.

## CONCLUSION

15. Based on the foregoing, your affiant submits that probable cause has been established that HUGHES, did, on or about April 15, 2015, willfully operate an unregistered aircraft without a pilot's certificate, and violate national defense airspace, in violation of 49 U.S.C. §§ 46036(b)(5) and 46307.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Kathryn Rivera
United States Capitol Police

_____
Magistrate Judge
U.S. District Court   DEBORAH A. ROBINSON
                     U.S. MAGISTRATE JUDGE

April 16, 2015
Date

7